B. D. Phillips, Incorporated, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

B. D. Phillips, Transferee, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

B. D. Phillips, Incorporated, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

B. D. Phillips, Transferee, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 106075, 109433, 109434, 109435.   Promulgated July 3, 1942.

*Rolland L. Ehrman, Esq.*, for the petitioners.
*J. Harrison Miller, Esq.*, for the respondent.

OPINION.

Disney: These proceedings, duly consolidated, involve personal holding company surtaxes for the calendar year 1937 in the amount of $90,026.46 and for 1938 in the amount of $38,482.40. The question at hand is whether the petitioner, B. D. Phillips, Inc., may deduct certain amounts, as used or irrevocably set aside to pay or retire indebtedness incurred prior to January 1, 1934. All facts have been stipulated. The stipulation is by reference adopted as our findings of fact, which will therefore be referred to herein only so far as necessary to examination of the issue. The income and excess profits tax returns and the returns of the personal holding company here involved were filed with the collector of internal revenue at Pittsburgh, Pennsylvania. It is stipulated that petitioner B. D. Phillips was at all dates material herein the sole stockholder of B. D. Phillips, Inc., and that as transferee of the entire assets of that corporation he is .

liable for any deficiencies in tax determined to be due from it, for the taxable years, plus interest as by law provided.

Summarized, the facts amount to this: that at the beginning of 1937 B. D. Phillips, Inc., hereinafter sometimes called the company (a personal holding company entirely owned by B. D. Phillips, herein called Phillips), owed $250,000 to Guaranty Trust Co., upon a note of $200,000 executed November 30, 1934, increased by $50,000 by an additional loan and new note on December 2, 1935. Upon that indebtedness there was paid $121,000 in 1937 and $53,000 in 1938 and in those amounts the company claimed, and was by the Commissioner denied, in the deficiency notice, deduction from adjusted net income, under section 1 of the Revenue Act of 1937, adding section 355 (b) by amendment to the Revenue Act of 1936, and under section 405 (b) of the Revenue Act of 1938. Since subsection (b) is the same in both acts, we show in the margin only section 355 (b).[1] Petitioner's theory is of course that the $250,000 was "indebtedness of any kind incurred prior to January 1, 1934," under the language of the revenue acts. The $250,000 borrowed was not directly used to discharge company indebtedness incurred prior to January 1, 1934, but was expended as follows: The first $200,000 was paid to T. W. Phillips Gas & Oil Co. on a note of B. D. Phillips, individually, to that company; and of the $50,000 later borrowed $33,000 was paid the same company on a note owed to it by B. D. Phillips, individually, and $17,000 was paid to Sun Life Assurance Co. on a note owed to it by B. D. Phillips, individually. These amounts so paid by the company for B. D. Phillips, individually, were debited to him on a running account kept against him on the books of the company, which account, on December 31, 1933, showed the company indebted to him in the amount of $259,821.80, and upon which a large number of debits and credits appeared during 1935-1938, inclusive. That account showed, on December 31, 1936, that B. D. Phillips owed the company $30,882.33. On January 1, 1934, the company also owed, to others than its sole stockholder, Phillips, a total of $572,000, including $197,000 to T. W. Phillips Gas & Oil Co., upon a note executed December 30, 1933. That note was, on January 5, 1934, assumed by Phillips as to $173,000 balance unpaid. All of the indebtedness of the company had by January 1, 1937, been discharged, except the $250,000 note to Guaranty Trust Co., in part by numerous transactions between Phillips and the company appearing as debits or credits upon his running account kept

---

[1] SEC. 355. UNDISTRIBUTED ADJUSTED NET INCOME.

For the purposes of this title the term "undistributed adjusted net income" means the adjusted net income (as defined in section 356) minus—

*    *    *    *    *

(b) Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness.

by the company. The running account also contains other items, such as credits to Phillips for $17,000 on May 9, 1934, for paying for New York Central bonds for the company, a debit of $500 for an advance to Mrs. B. D. Phillips on March 26, 1934, a credit of $21,000 on December 27, 1934, for purchase from B. D. Phillips of notes and mortgages of one Colonel Heeter; also a credit of $4,000 on December 10, 1935, on account of payment by the company of purchase price of Allis-Chalmers bonds purchased by Phillips, and a debit of $96,320 because of sale to Phillips of Cement Co. bonds. The note of Phillips to T. W. Phillips Gas & Oil Co., upon which all of the $200,000, and $33,000 of the $50,000, was paid, appears from the record, and we find, to be a note other than that to T. W. Phillips Gas & Oil Co. which Phillips assumed on January 5, 1934, to the amount of $173,000; for prior to the $200,000 loan $106,500 had been paid on the $173,000 note assumption.

The petitioner's view, on the result of the above described transactions upon the present problem, is stated on brief as follows:

\* \* \* It is the Petitioners' contention that the indebtedness of B. D. Phillips, Incorporated, to B. D. Phillips, individually, on which the proceeds of said note were applied, represented indebtedness incurred prior to January 1, 1934, and that its aforesaid note to Guaranty Trust Company of New York was in effect a renewal of this indebtedness.

It is seen from the facts above that the $250,000 was not in form and directly applied upon any of the company's indebtedness incurred prior to January 1, 1934, but that it was applied upon the debts of Phillips to others, almost entirely upon a note to T. W. Phillips Gas & Oil Co. and $17,000 upon a note to an assurance company upon notes not shown to have had their inception prior to January 1, 1934. If we disregard form as petitioner suggests, does it none the less appear, as a matter of substance and fact, that application was made upon "indebtedness of any kind" incurred prior to the basic date? The petitioner in effect says that this is so because the payments were made for and on behalf of Phillips and debited to him on his account on the books of the company. The respondent contends that this does not satisfy the statute, and points out that on the account of Phillips with his company the company's indebtedness had been discharged prior to the beginning of 1937 and on January 1, 1937, he owed the company $30,882.33.

In *Sun Pipe Line Co.*, 42 B. T. A. 1413; affd., 126 Fed. (2d) 888, we held that where a bond issue was existing on January 1, 1934, and, after that date, was refunded by borrowings from others, payments made to retire the refunded bonds came within the language of section 355 (b), Revenue Act of 1936. The petitioner urges that we have a parallel problem here. After much analysis of the running account herein relied upon as representing the pre-1934 indebtedness dis-

charged by the new borrowing of $250,000, and of the law involved, we have come to the conclusion that the situation is not parallel with the *Sun Pipe Line Co.* case, *supra.* Thereunder an actual, though not a technical, continuance of an indebtedness identified as surviving from prior to the basic date, and identified as that of the taxpayer, logically demanded allowance of the deduction.

Here the new loan, upon which the payments in dispute were made, was applied upon the debt of another, and its inception is not shown, i. e., it is neither identified as that of the taxpayer nor as antedating January 1, 1934. The petitioner's burden of showing error on the part of the Commissioner seems thus to become more difficult. Does the running account, involving debts originating prior to 1934, answer the petitioner's quest? We think it does not. Certainly large amounts, about $111,000 of the original indebtedness to Phillips, had been paid before the $200,000 was borrowed. Though there were other debts which the company's sole stockholder, after the crucial date, in large part assumed or discharged as the result of a running account of debits and credits, we do not believe that such a situation was within the intent of Congress in the language of its acts. The sole stockholder after the vital date assumes and discharges the taxpayer's old debts, particularly that to T. W. Phillips Gas & Oil Co.; then later his company, in its turn, borrows $250,000 and pays off notes of his to the same creditor, and another to still another creditor. Further, other items, new since the date of importance, enter into the balance between the company-taxpayer and its sole stockholder; and the running account relied upon to show old debt dwindles prior to the taxable years to no debt owed by, but a debt owed to, the company. Under such circumstances we think it plain that the petitioner has failed to identify the new loans upon which the questioned payments were made, as true continuants of the old indebtedness. To pay a debt (perhaps a new debt) of a sole stockholder, and to charge it as a debit on a running account against him which entails many items both of debit and credit, seem to us far from proof of reality of old debt. No evidences of debt, such as notes or mortgages, appear to be executed to the sole stockholder when he assumes or discharges his company's old debts. This causes mere book entries in his favor; and may it not be equally as easy to consider that he was making capital contributions to his corporation as to assume, without proof of any of the usual concomitants of debt, such as promises to pay, that a pecuniary burden was by him imposed on his company? This situation, as we see it, does not present the situation Congress had in mind in providing deductions for old debts paid; on the contrary, it appears to bear resemblance to the incorporated pocketbook, prevention of which was sought.

We note, moreover, that of the payments of $121,000 sought as deductions in 1937, only $19,000 was made directly to the payee, Guaranty Trust Co., by the company. The remainder was made by the company, by payments on a note made by it to T. W. Phillips Gas & Oil Co., which had made payments to Guaranty Trust Co.; and by Phillips, individually, in part directly and in part by payments on the company's note to T. W. Phillips Gas & Oil Co.: and these payments were entered on the running account of Phillips with the company. The same conclusions to which we have come above, therefore, in part, apply to the payments made on the debt to Guaranty Trust Co. in 1937.

We conclude and hold that the Commissioner did not err in denying the deductions claimed and in assertion of liability against the transferee.

*Decision will be entered for the respondent.*